IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | | |
|---|---|---|
| BRANCH GROUP, INC., d/b/a REXEL, a Nevada Corporation, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 1:09-cv-00399 |
| HAGEMEYER NORTH AMERICA, INC., BILLY L. HARRIS, KAVAN R. GRAYBILL, JASON E. BARTLETT, MICHAEL A. RECTOR, LAWRENCE M. THOMAS, and RICHARD A. TWEED, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT

COMES NOW Plaintiff, Branch Group, Inc. d/b/a Rexel ("Rexel" or "Plaintiff"), by and through the undersigned counsel, and alleges as follows for its Complaint against Defendants Billy L. Harris ("Harris"), Kavan R. Graybill ("Graybill"), Jason E. Bartlett ("Bartlett"), Michael A. Rector ("Rector"), Lawrence M. Thomas ("Thomas"), and Richard A. Tweed ("Tweed") (collectively, "Individual Defendants"), and Defendant Hagemeyer North America, Inc. ("Hagemeyer"):

## PARTIES

1. Plaintiff is a corporation organized under the laws of the State of Nevada and maintains its principal place of business in Upper Marlboro, Maryland. Plaintiff is authorized to conduct business in the State of North Carolina.

2. Upon information and belief, Defendant Hagemeyer is a corporation organized under the laws of the State of Delaware and maintains its principal place of business in

1

Charleston, South Carolina. Defendant Hagameyer conducts business in Buncombe County, North Carolina.

3. Defendant Harris is, upon information and belief, a citizen and resident of Sumner County, Tennessee. Defendant Harris works in and around Buncombe County, North Carolina, and a substantial part of the events giving rise to Plaintiff's claims against Defendant Harris occurred in and around Buncombe County, North Carolina.

4. Defendant Graybill is, upon information and belief, a citizen and resident of Buncombe County, North Carolina.

5. Defendant Bartlett is, upon information and belief, a citizen and resident of Buncombe County, North Carolina.

6. Defendant Rector is, upon information and belief, a citizen and resident of Buncombe County, North Carolina.

7. Defendant Thomas is, upon information and belief, a citizen and resident of Buncombe County, North Carolina.

8. Defendant Tweed is, upon information and belief, a citizen and resident of Buncombe County, North Carolina.

## JURISDICTION AND VENUE

9. Pursuant to 28 U.S.C. § 1332, this Court has subject matter jurisdiction as complete diversity of citizenship exists between Plaintiff and Defendants, and the amount in controversy exceeds $75,000.00.

10. Venue is proper in the Western District of North Carolina, Asheville Division, pursuant to 28 U.S.C. § 1391. A substantial part of the events giving rise to Plaintiff's claims occurred in and around Buncombe County, North Carolina.

11.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's claims arising under North Carolina state law for *inter alia*, breach of contract, breach of fiduciary duty, tortious interference with contract, tortious interference with prospective advantage, violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.*, unjust enrichment, and conspiracy.

## FACTS

12.     Plaintiff is a leading wholesale distributor of electrical parts and supplies. Specifically, Plaintiff, through its area managers and salespersons, contacts customers directly to identify the customers' needs and directly market electrical parts and supplies to satisfy those needs. Plaintiff also provides in-store sales of its products to customers and potential customers.

13.     Rexel hired Defendant Harris on or about July 31, 2006, as Branch Manager for Plaintiff's Asheville, North Carolina branch located at 157 Asheland Avenue (hereinafter, Plaintiff's "Asheville branch"). In 2008, Harris was promoted to Area Manager. The Asheville branch was within Defendant Harris' region.

14.     On or about July 31, 2006, Defendant Harris executed a Confidentiality and Non-Solicitation Agreement ("Non-Solicitation Agreement"). This Non-Solicitation Agreement was executed at the time of his hire, and Rexel's offer of employment to Defendant Harris was contingent upon his execution of the Non-Solicitation Agreement. A copy of Harris' Non-Solicitation Agreement is attached and incorporated by reference into this Complaint as Exhibit 1.

15.     At all times relevant hereto, Rexel employed Defendant Graybill in the position of Outside Sales in Plaintiff's Asheville branch until his resignation from Rexel on or about October 12, 2009.

16. At all times relevant hereto, Rexel employed Defendant Bartlett in the position of Outside Sales in Plaintiff's Asheville branch until his resignation from Rexel on or about October 12, 2009.

17. At all times relevant hereto, Rexel employed Defendant Thomas in the position of Outside Sales in Plaintiff's Asheville branch until his resignation from Rexel on or about October 12, 2009.

18. In the position of Outside Sales, Defendants Graybill, Bartlett, and Thomas were responsible for identifying and contacting Rexel customers and potential customers, analyzing the customers' business, identifying the customers' needs, and marketing Rexel products to meet those needs. As such, Defendants Graybill, Bartlett, and Thomas were pivotal in building trust and establishing relationships between Rexel and its customers and potential customers.

19. On or about May 28, 2009, Defendant Thomas executed a Non-Solicitation Agreement. In consideration for the execution of this Non-Solicitation Agreement, Rexel substantially increased Defendant Thomas' salary, from a draw against commission of $34,398 annually to a salary of $119,998.88 and an incentive plan with a guaranteed annual compensation rate of $137,500. A copy of the Thomas' Non-Solicitation Agreement is attached and incorporated by reference into this Complaint as Exhibit 2.

20. At all times relevant hereto, Rexel employed Defendant Rector in the position of Sr. Inside Sales - Lead in Plaintiff's Asheville branch until his resignation from Rexel on or about October 12, 2009.

21. In the position of Inside Sales, Defendant Rector was responsible for providing service and marketing Rexel products to customers in Plaintiff's Asheville branch. As such,

Defendant Rector was pivotal in building trust and establishing relationships between Rexel and its in-store customers and potential customers.

22. On or about May 28, 2009, Defendant Rector executed a Non-Solicitation Agreement. In consideration for his execution of this Non-Solicitation Agreement, Rexel promoted Defendant Rector to the position of Sr. Inside Sales – Lead and increased his compensation to a minimum of $24.43 per hour, plus an opportunity to receive commissions of up to $80,000. A copy of Rector's Non-Solicitation Agreement is attached and incorporated by reference into this Complaint as Exhibit 3.

23. At all times relevant herein, Rexel employed Defendant Tweed in the position of Counter Supervisor in Plaintiff's Asheville branch until his resignation from Rexel on or about October 12, 2009.

24. Under the terms of the Non-Solicitation Agreements signed by Defendants Harris, Thomas, and Rector, each agreed "for a period of one year after my termination of employment with [Rexel] that I will not, on behalf of myself or any employer, solicit the employment of or hire (i) any employee or consultant employed or retained by the Company. . ." (Exs. 1-3, ¶ 6.)

25. In signing their Non-Solicitation Agreements, Defendants Harris, Thomas and Rector further agreed:

> [D]uring my employment with the Company and during a period of one year following the termination of my employment with the Company for any reason that I will not, on behalf of myself or any employer, call upon, contact or solicit, directly or indirectly, any customer, including any actively sought prospective customer, of the Company (i) with whom I had material contact while employed by the Company or any of its Affiliates, (ii) whose contacts with the Company were supervised by me or (iii) about whom I acquired Confidential Information during my last twelve months of employment with the Company, for the purpose of providing products or services that are competitive with those offered by the Company. I also agree not to solicit or divert, or to attempt to solicit or divert, either directly or indirectly, any business of the Company to any competitor.

(Exs. 1-3, ¶ 7.)

26. The Non-Solicitation Agreement signed by Harris defines "Confidential Information" as "information, both oral and written . . . that the Company discloses to me or I otherwise learn or ascertain in any way as a result of, or in relation to, employment at the Company." (Ex. 1, ¶ 1.)

27. The Non-Solicitation Agreements signed by Thomas and Rector define "Confidential Information" as pricing information, customer information such as customer preferences, customer lists, sales techniques, training programs and materials, marketing plans, cost information . . . business plans . . . trade secrets, and other information that amount to valuable, special, and unique assets of the Company." (Exs. 2-3, ¶ 1.)

28. In addition, each of the Individual Defendants also acknowledged receiving and agreeing to be bound by Rexel's Code of Ethics: Defendant Harris on or about July 31, 2006, Defendant Graybill on or about October 9, 2003, Defendant Bartlett on or about August 31, 2007, Defendant Rector on or about August 22, 2007, Defendant Thomas on or about October 20, 2003, and Defendant Tweed on or about August 22, 2007.

29. Defendant Hagemeyer is a wholesale distributor of, among other things, electrical products. As such, Hagemeyer is a direct competitor of Rexel.

30. Upon information and belief, at some point in the Summer or Fall of 2009, Defendant Harris began discussions with Hagemeyer regarding employment opportunities with Hagemeyer.

31. Upon information and belief, Defendant Harris intentionally solicited the remaining Individual Defendants to leave employment with Rexel and accept employment with Hagemeyer.

32. In an effort to convince Rexel employees to join his team at Hagemeyer, Harris sought to scare the Rexel employees into leaving the company by threatening their job security. For example, Harris informed employees that their names appeared on a potential list of employees who may be laid off during a possible reduction in force. Harris knew this information was closely held, highly confidential, and not finalized or formal.

33. Such solicitation of one or more of the Individual Defendants by Defendant Harris was a violation of Harris' Non-Solicitation Agreement. (Ex. 1, ¶ 6.)

34. One or more of the Individual Defendants, working in concert with Hagemeyer while still employed by Rexel, developed a plan to inform Rexel's customers and potential customers that they were leaving employment with Rexel, resign from employment with Rexel, accept employment with Hagemeyer, and recruit away customers and potential customers from Rexel to Hagemeyer.

35. Upon information and belief, before resigning from Rexel, each of the Individual Defendants, working in concert with and as agents of Hagemeyer, approached current and potential Rexel customers, informed them that the Individual Defendants would be leaving employment with Rexel, and solicited these customers to begin doing business with Hagemeyer.

36. On or about October 11, 2009, Defendant Harris resigned from his employment with Rexel. Defendant Harris gave no advance notice of his resignation to Rexel.

37. Upon information and belief, Defendant Harris began formal employment with Hagemeyer immediately upon resigning from his employment with Rexel.

38. Upon information and belief, Defendant Harris, working in concert with and as an agent of Hagemeyer, convinced Graybill, Bartlett, Rector, Thomas and Tweed to resign from their employment with Rexel and begin working for Hagemeyer.

39. On or about October 12, 2009, Defendants Graybill, Bartlett, Rector, Thomas and Tweed resigned from their employment with Rexel. Defendants Graybill, Bartlett, Rector, Thomas and Tweed gave no advance notice of their resignation from Rexel.

40. Upon information and belief, Defendants Graybill, Bartlett, Rector, Thomas and Tweed began formal employment with Hagemeyer immediately upon resigning from employment with Rexel.

41. Upon information and belief, after resigning from Rexel, the Individual Defendants, in concert with and as agents of Hagemeyer, approached at least twelve Rexel customers, informed them that one or more of the Individual Defendants were no longer employed by Rexel, and solicited these customers to begin doing business with Hagemeyer.

42. The Rexel customers solicited by one or more of each of the Individual Defendants, working in concert with and as agents of Hagemeyer, had annualized sales with Rexel in 2009 of at least $1,900,000.

43. Unless specifically stated otherwise, at all times described herein each of the Individual Defendants acted in concert with one or more of the other Individual Defendants and with Defendant Hagemeyer.

## **FIRST CAUSE OF ACTION**
**Breach of Contract by Harris, Thomas, and Rector**

44. Plaintiff adopts, as if fully set forth herein, the allegations of Paragraphs 1-43 above.

45. Defendants Harris, Thomas, and Rector executed Non-Solicitation Agreements with Plaintiff.

46. These Non-Solicitation Agreements are valid, enforceable contracts.

47. The Non-Solicitation Agreements were supported by valuable consideration.

48. As described in detail, *supra*, Harris executed his Non-Solicitation Agreement at the time of his hire, and Rexel's offer of employment to Defendant Harris was contingent upon his execution of the Non-Solicitation Agreement.

49. As described in detail, *supra*, in consideration for Defendant Rector's execution of the Non-Solicitation Agreement, Rexel promoted Defendant Rector and increased his compensation to a minimum of $24.43 per hour, plus an opportunity to receive commissions of up to $80,000.

50. As described in detail, *supra*, in consideration for Defendant Thomas' execution of the Non-Solicitation Agreement, Rexel gave Defendant Thomas an increase in salary from a draw against commission of $34,398 annually to a salary of $119,998.88 and an incentive plan with a guaranteed annual compensation rate of $137,500.

51. Defendants Harris, Thomas and Rector breached their respective Non-Solicitation Agreements.

52. Defendant Harris breached his Non-Solicitation Agreement by soliciting Rexel employees to leave employment with Rexel and accept employment with Rexel's direct competitor, Hagemeyer. The employees Harris solicited include, among others, one or more of the remaining Individual Defendants.

53. Defendant Harris breached his Non-Solicitation Agreement by directly and indirectly soliciting current and prospective Rexel customers to cease doing business with Rexel and begin doing business with Hagemeyer.

54. Defendant Thomas breached his Non-Solicitation Agreement by directly or indirectly soliciting current and prospective Rexel customers to cease doing business with Rexel and begin doing business with Hagemeyer.

9

Case 1:09-cv-00399-MR-DLH   Document 1   Filed 10/29/09   Page 9 of 17

55. Defendant Rector breached his Non-Solicitation Agreement by directly or indirectly soliciting current and prospective Rexel customers to cease doing business with Rexel and begin doing business with Hagemeyer.

56. As a result of Harris, Thomas, and Rector's malicious, unjustified conduct in breaching their respective Non-Solicitation Agreements with Plaintiff, Plaintiff suffered damages in an amount to be determined at trial but believed to exceed $75,000.00.

## SECOND CAUSE OF ACTION
### Tortious Interference with Prospective Advantage by All Defendants

57. Plaintiff adopts, as if fully set forth herein, the allegations of Paragraphs 1-56 above.

58. As described in greater detail, *supra*, each of the Defendants knowingly and intentionally induced third parties to refrain from entering into contracts with Plaintiff. Specifically, each of the Individual Defendants, at the direction of and as agents of Hagemeyer, solicited potential customers of Rexel to not purchase products from Rexel and begin purchasing products from Hagemeyer. Defendants Harris, Thomas, and Rector did so in violation of their respective Non-Solicitation Agreements. These are examples of Defendants' intentional and tortious interference with prospective advantage, and are provided only as examples among many of Defendants' wrongful, malicious conduct in inducing third parties to refrain from entering into contracts with Plaintiff.

59. There was no justification for any of these actions by the Defendants.

60. Defendants' actions were malicious, not in the legitimate exercise of the Defendants' own rights, and were designed to injure Plaintiff or gain some advantage at Plaintiff's expense.

61. The prospective contracts would have been entered into but for Defendants' interference and tortious actions.

62. As a result of Defendants' malicious, unjustified conduct in inducing third parties from entering into contracts with Plaintiff, Plaintiff suffered damages in an amount to be determined at trial but believed to exceed $75,000.00.

## THIRD CAUSE OF ACTION
### Breach of Fiduciary Duty as to Defendants Harris

63. Plaintiff adopts, as if fully set forth herein, the allegations of Paragraphs 1-62 above.

64. Defendant Harris, in his role as Area Manager for Rexel, owed a fiduciary duty to Plaintiff. Defendant Harris' role as Area Manager created a relationship of trust and confidence between himself and Plaintiff. As Area Manager, Defendant Harris exercised substantial authority and control over the Rexel employees, business activity, strategy, customer contacts, and customer relationships of the Rexel branches within his geographic area, including the Asheville branch. Defendant Harris was thus in a fiduciary role, as this authority and control subjected Plaintiff to the improper influence and domination of Harris.

65. Defendant Harris breached the fiduciary duties owed to Plaintiff by acting without good faith in: (a) violating the Non-Solicitation Agreement; (b) soliciting Rexel employees to leave employment with Rexel and accept employment with its direct competitor, Hagemeyer, in violation of the Non-Solicitation Agreement and while still employed by Rexel; and (c) directly and indirectly soliciting current and prospective Rexel customers to stop doing business with Rexel and start doing business with Hagemeyer both before and after leaving his employment with Rexel.

66. As a proximate result of Defendants Harris' breaches of the respective fiduciary duties he owed to Rexel, Plaintiff has suffered damages in an amount to be determined at trial but believed to exceed $75,000.00.

## FOURTH CAUSE OF ACTION
**Violation of the Unfair and Deceptive Trade Practices Act as to All Defendants**
**N.C. Gen. Stat. § 75-1.1, *et seq*.**

67. Plaintiff adopts, as if fully set forth herein, the allegations of Paragraphs 1-66 above.

68. Defendants' willful and wrongful actions as set forth above, including, but not limited to, Hagemeyer's recruitment of Rexel Area Manager Harris, Hagemeyer and Harris' recruitment and raiding of the remaining Individual Defendants from Rexel, and all of the Defendants' efforts to solicit away current and prospective Rexel customers, were unfair and deceptive. Defendants' actions were unethical, unscrupulous, and had a tendency to deceive.

69. Defendants' actions were immoral, unethical, oppressive, unscrupulous, or substantially injurious.

70. Defendants' actions were wrongful as evidenced by the timing, subterfuge, and purpose. Defendants' actions were not a reasonable or bona fide attempt to protect their interests.

71. Defendants were, at all times relevant to this Complaint, engaged in or affecting commerce.

72. Defendants' unfair and deceptive trade practices proximately caused injury to Plaintiff well in excess of $75,000.

73. Pursuant to N.C. Gen. Stat. § 75-16.1, Plaintiff is entitled to reasonable attorneys' fees and costs.

74. Plaintiff's business has been injured as a direct and proximate result of Defendants' willful actions, and, pursuant to N.C. Gen. Stat. § 75-16, Plaintiffs are entitled to treble damages as a result.

**FIFTH CAUSE OF ACTION**
**Unjust Enrichment as to All Defendants**

75. Plaintiff adopts, as if fully set forth herein, the allegations of Paragraphs 1-74 above.

76. Plaintiff paid each of the Individual Defendants for what it believed to be the Individual Defendants' work for Plaintiff.

77. Plaintiff provided each of the Individual Defendants with resources, including, but not limited to, computers, electronics, equipment, and other support, to perform services for Plaintiff.

78. A significant portion of the work performed by each of the Individual Defendants on Rexel's time and expense and while using Rexel's resources was actually performed for Hagemeyer. For example, while ostensibly employed by Rexel, and while being paid by Rexel, the Individual Defendants visited or called upon current Rexel customers to inform them that they were leaving employment with Rexel and solicited their business on behalf of Hagemeyer.

79. Plaintiff reasonably expected that the Individual Defendants legitimately performed the services for which they were paid.

80. The Individual Defendants knew or had reason to know Plaintiff expected the money it paid was for legitimate services.

81. The Individual Defendants voluntarily accepted and retained money in the form of their wages or salaries after having a realistic opportunity to either refuse it or return it to Plaintiff.

82. Defendant Hagemeyer voluntarily accepted and retained money for the work performed for it by the Individual Defendants at the expense of and using the resources of Rexel.

83. As a result, Defendants were unjustly enriched in an amount to be determined at trial but expected to exceed $75,000.

## SIXTH CAUSE OF ACTION
### Interference with Contract as to Defendants Hagemeyer and Harris

84. Plaintiff adopts, as if fully set forth herein, the allegations of Paragraphs 1-83 above.

85. The Non-Solicitation Agreements executed by Defendants Harris, Thomas, and Rector are valid contracts.

86. These Non-Solicitation Agreements confer upon Plaintiff a contractual right against Harris, Thomas, and Rector.

87. Defendant Hagemeyer knew or should have known of the existence of the Non-Solicitation Agreements.

88. Defendant Harris knew or should have known of the existence of the Non-Solicitation Agreements executed by Thomas and Rector.

89. Defendant Hagemeyer intentionally induced Harris, Thomas, and Rector to breach their respective Non-Solicitation Agreements.

90. Defendant Harris intentionally induced Thomas and Rector to breach their respective Non-Solicitation Agreements.

91. In doing so, Hagemeyer and Harris acted without justification.

92. As a proximate result of Defendants Harris and Hagemeyer's intentional and tortious interference with contract, Plaintiff has suffered damages in an amount to be determined at trial but believed to exceed $75,000.00.

## SEVENTH CAUSE OF ACTION
### Civil Conspiracy as to All Defendants

93. Plaintiff adopts, as if fully set forth herein, the allegations of Paragraphs 1-92 above.

94. As described in detail, *supra*, Defendants Harris and Hagemeyer worked in concert to raid Rexel's employees by soliciting each of the remaining Individual Defendants to leave employment with Rexel and accept employment with Hagemeyer.

95. Defendants Hagemeyer and Harris worked in concert to induce Defendants Thomas and Rector to breach their respective Non-Solicitation Agreements.

96. Defendants worked in concert to knowingly and intentionally induce third parties to refrain from entering into contracts with Plaintiff. Specifically, Defendants worked in concert to solicit the current and prospective Rexel customers to stop purchasing products from Rexel and instead purchase them from Hagemeyer.

97. As set forth in detail, *supra*, Defendants Harris, Graybill, Rector, Thomas and Bartlett worked in concert to breach their respective fiduciary duties owed to Plaintiff.

98. Defendants acted in concert to willfully, unfairly and deceptively compete with Rexel. Defendants' willful, unfair and deceptive actions include, but are not limited to, Hagemeyer and Harris' recruitment and raiding of the remaining Individual Defendants from Rexel, and Defendants' efforts to solicit away current and prospective Rexel customers.

99. Defendants did in fact perform the above-described overt actions pursuant to their agreement.

100. As described in detail, *supra*, Defendants' actions are unlawful or committed in an unlawful way.

15

101. Defendants' actions were malicious and willful and were performed pursuant to a common scheme.

102. Plaintiff lost business and business opportunities as a direct and proximate result of Defendants' actions.

103. Defendants' agreement resulted in injury to Plaintiff inflicted by the Defendants/co-conspirators in an amount to be determined at trial but believed to exceed $75,000.00.

## EIGHTH CAUSE OF ACTION
**Punitive Damages as to All Defendants**
**N.C. Gen. Stat. § 1D-15**

104. Plaintiff adopts, as if fully set forth herein, the allegations of Paragraphs 1-103 above.

105. Plaintiff is entitled to compensatory damages as set forth above.

106. Defendants' actions involved malicious, willful and wanton conduct.

107. Defendants consciously and intentionally disregarded with indifference the rights of Plaintiff.

108. Defendants knew or should have known that their malicious, willful and wanton conduct was reasonably likely to result in injury, damage, and other harm to Plaintiff. Such actions amounted to more than gross negligence.

109. Defendants' malicious, willful and wanton conduct, as described herein, did proximately cause injury, damage and harm to Plaintiff.

110. Pursuant to N.C. Gen. Stat. § 1D-15, Plaintiff is therefore entitled to the recovery of punitive damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiff respectfully prays that this Court:

a) Issue a preliminary injunction enjoining Defendants from contacting, calling on, or soliciting, either directly or indirectly, Plaintiff's current or prospective customers and employees;

b) Upon final disposition, enter a permanent injunction enjoining Defendants from contacting, calling on, or soliciting, either directly or indirectly, Plaintiff's current or prospective customers and employees;

c) Award Plaintiff actual and compensatory damages in an amount to be determined at trial, but expected to exceed $75,000.00;

d) Award Plaintiff punitive damages in an amount to be determined at trial;

e) Award Plaintiff the costs and expenses of this action, including litigation expenses and attorneys' fees pursuant to applicable law; and

f) Grant such other and further relief as is just and necessary to afford complete relief to Plaintiff.

Dated this the 29th day of October, 2009.

        Respectfully submitted

        <u>s/H. Bernard Tisdale III</u>
        N.C. State Bar No. 23980
        *Attorney for Plaintiff*
        Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
        201 South College Street, Suite 2300
        Charlotte, NC  28244
        Telephone:  (704) 342-2588
        Facsimile:  (704) 342-4379
        Email: bernard.tisdale@ogletreedeakins.com